NOT PRECEDENTIAL – NOT FOR PUBLICATION

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

LPP MORTGAGE LTD. f/k/a LOAN        )
PARTICIPANT PARTNERS, LTD.,         )
                                    )
            Plaintiff,              )
                                    )
v.                                  )
                                    )
MARIO MOORHEAD and LISA G.          )
HARRIS-MOORHEAD a/k/a LISA          )
CARTER,                             )
            Defendants.             )        CIVIL NO. 2003/0057
_____ )
                                    )
MARIO MOORHEAD and LISA HARRIS-     )
MOORHEAD,                           )
                                    )
       Third-Party Plaintiffs,      )
                                    )
v.                                  )
                                    )
THE UNITED STATES SMALL             )
BUSINESS ADMINISTRATION.            )
                                    )
       Third-Party Defendant        )
_____ )

## <u>MEMORANDUM OPINION</u>

Finch, J.

THIS MATTER comes before the Court on the Third-Party Defendant's Motion for

Summary Judgment.  The United States Small Business Administration [hereinafter "the SBA"]

seeks summary judgment against Third-Party Plaintiffs Mario Moorhead and Lisa G. Harris

Moorhead.

## I.      Background

The Moorheads own real property in St. Croix, United States Virgin Islands.  The

Moorheads obtained a loan from the SBA.  As security for such loan, the Moorheads executed a

promissory note [hereinafter "the Note"] and granted the SBA a Mortgage against their property.

As part of a government-wide initiative, the Office of Management and Budget ("OMB")

directed the SBA to sell its loan portfolios.  65 Fed. Reg. 17132 (Mar. 31, 2000).  The SBA

Administrator, by statute, has the power to sell SBA loans at a public sale pursuant to regulations

prescribed by the Administrator.  See 15 U.S.C. § 634(b)(2).  The Administrator also may "take

any and all actions . . . . when [she] determines such actions are necessary or desirable in making,

servicing, compromising, modifying, liquidating, or otherwise dealing with or realizing on

loans." 15 U.S.C. § 634(b)(7).

In reliance on this statutory authority and in compliance with the OMB directive, the

SBA amended its regulations to permit the bulk sales of SBA's disaster loans, in performing and

non-performing status.[1]  65 Fed. Reg. 17132.  Pursuant to 13 C.F.R. § 120.540(a)(4), SBA must

"offer these loans for sale to qualified bidders by means of competitive procedures at publicly

advertised sales."

---

[1]  In promulgating such regulations, the SBA represented:

> There will be no economic impact upon the small businesses that received those
> loans because the loans that will be sold are merely changing ownership, so no
> new funding is involved.  The purchaser of the loans will be bound by the terms of
> the loan documents in the same manner as SBA.  The Agency does not anticipate
> that any additional costs will be placed upon small entities.  Therefore, SBA
> believes there will be no economic impact on small businesses.

65 Fed. Red. 17132, 17133.

The Moorheads' Note was included in SBA's Asset Sale No. 2 which was held on August 1, 2000 and sold on August 31, 2000 to Loan Participation Partners, Ltd., which is now known as LPP Mortgage Ltd. (LPP), at a discounted rate. The SBA then assigned the Moorheads' Note to LPP. The Moorheads' default under the terms and conditions of the Note, precipitated LPP filing a suit for collection.

## II.    The Parties' Contentions

In the Moorheads' two-count Third-Party Amended Complaints, the Moorheads contend *inter alia* that the SBA breached the implied covenant of good faith and fair dealing by not notifying them that their Note would be sold as part of Asset Sale No. 2. According to the Moorheads, if SBA had notified them of the sale, they would have attempted to negotiate with the SBA to buy back their own Note. The alleged lack of notification, the Moorheads claim, damaged them by depriving them of the opportunity to enter into such negotiations. The Moorheads also allege that the SBA discriminated against them and other West Indian black borrowers by failing to publicly advertise Asset Sale No. 2 in the Virgin Islands and by failing to notify such borrowers of the sale while notifying non-West Indian and non-black borrowers.

The SBA responds that it was not required to make a reasonable effort to notify the Moorheads that their Note would be sold as part of Asset Sale No. 2. The SBA further maintains that even if it were obligated to use reasonable efforts to notify the Moorheads, as a matter of law, its efforts were reasonable. Finally, the SBA contends that it widely publicized the sale and that there is no evidence from which a reasonable jury could find that it intended to discriminate against black or West Indian people by not advertising in the Virgin Islands.

## III.   Discussion

A.   Breach of the Implied Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing prohibits either party from preventing the other party from receiving the fruits of the contract. Black Horse Lane Assoc., L.P. v. Dow Chemical Corp., 228 F.3d 275, 288 (3d Cir. 2000). "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." Id. A party may breach an implied covenant without violating an express term of a contract. Fields v. Thompson Printing Co., Inc., 363 F.3d 259, 271 (3d Cir. 2004). Breach of the implied covenant of good faith and fair dealing may be asserted under federal contract law. See Livingstone v. North Belle Vernon Borough, 91 F.3d 515, 526, n.11 (3d Cir.1996); see also Restatement (Second) of Contracts § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement").

SBA's Standard Operating Procedure (SOP) 50 51 2, ch.4, ¶ 14 (eff. date Nov. 2, 1998), provides: "As a matter of policy, a reasonable effort should be made to notify the borrower of the sale of a loan.[2]" The SBA points out, in its opposition, that the SOP does not specify whether the borrower should be notified before or after the loan sale. The Court agrees that the SOP does not specify a time frame for the notification. The SBA could have complied with the SOP by

_____

[2]  Paragraph 14 of chapter 4 provides in its entirety:

14. What is SBA's Policy on the Sale of a Loan?

A cash sale for less than the total amount due and transfer of the note and related loan documents, without recourse, may be approved when it is within the delegated compromise authority level of a district or branch office with the written consent of the participant, where appropriate. As a matter of policy, a reasonable effort should be made to notify the borrower of the sale of a loan.

4

notifying the Moorheads only post-sale.  Notification to the Moorheads only after the loan sale would not breach the implied duty of good faith and fair dealing.  Yet, if the SBA had notified the Moorheads post-sale, rather than pre-sale, the Moorheads could not have entered into negotiations with the SBA.  The Moorheads do not identify any damages caused by any post-sale lack of notification.

Thus, even if a jury could find that the SBA breached the implied covenant of good faith and fair dealing by failing to notify the Moorheads of the loan sale at all, either pre- or post-sale, a reasonable jury could not find that such breach caused the damages claimed by the Moorheads, since such damages relate only to pre-sale notification, which the SOP does not reference explicitly or implicitly.

Moreover, Chapter 1 of the same SOP provides: "In this SOP, 'MUST' is used when the action is mandatory."   By implication then, the notification provision is not mandatory. Although the policy of the SBA was to encourage notification, the SBA was not required to use reasonable efforts to notify the Moorheads of the sale of a loan.  Because the SBA was not obligated to use reasonable efforts to notify the Moorheads of the sale of the loan, but merely encouraged to do so, the SBA could not have breached the implied duty of good faith and fair dealing, even by failing to use reasonable efforts to notify the Moorheads of the sale of the loan.

Because the SOP does not specify that the notification be pre-sale as opposed to post-sale and because the notification provision is not written in mandatory language, the Court grants summary judgment in SBA's favor.  The Court does not reach the question of whether the SBA's efforts to notify the Moorheads were reasonable.

B.     Discriminatory Conduct

In Count II, the Moorheads charge the SBA with racial discrimination in violation of 42

U.S.C. § 1981, which provides:

> All persons within the jurisdiction of the United States shall have the same right
> in every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other.

The Moorheads' Third-Party Amended Complaint, read liberally, alleges that the SBA purposely

did not advertise Asset Sale No. 2 in the Virgin Islands and purposely did not notify them by any

other means that their Note would be included in Asset Sale No. 2.  According to the Moorheads,

the reason that the SBA deliberately failed to give them adequate notice was because this would

have benefitted them by giving them an opportunity to negotiate an agreement to buy back their

Note before it was sold and that the SBA did not want to afford them that opportunity because

the Moorheads are black and West-Indian.  The Moorheads have stated the elements of section

1981: "(1) [that plaintiffs are] member[s] of a racial minority; (2) intent to discriminate on the

basis of race by the defendant; and (3) discrimination concerning one or more of the activities

enumerated in the statute[,] which includes the right to make and enforce contracts." Brown v.

Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001) (quotation omitted).  If the lack of

advertisement was calculated to assure that the Moorheads and other black and West-Indian

borrowers did not learn that their notes would be included in Asset Sale No. 2, so that the

Moorheads and other borrowers would not have an opportunity to buy back their loans from the

SBA, then such conduct would be discriminatory in violation of section 1981.

6

Third-party Plaintiffs have shown no more than that Asset Sale No. 2 was not advertised in the Virgin Islands.  This is insufficient evidence from which a reasonable jury could infer that the SBA had an intent to discriminate on the basis of race.

## IV.    Conclusion

The Court grants summary judgment on the remaining counts of the Third-party Plaintiffs' Complaints in favor of the SBA.

ENTER:

DATE:          October 7, 2008              _____/s/_____
                                            Honorable Raymond L. Finch
                                            District  Judge